No. 5954.

### P. J. PETERS SADDLERY AND HARNESS COMPANY v. SCHOELKOPF & COMPANY.

1. CLAIM BOND FOR TRIAL OF RIGHT OF PROPERTY.— Where property is seized under several writs, a claim bond for the trial of the right to the property is properly made payable to the plaintiffs in all the writs levied, and but one bond is necessary or proper.

2. SALE BY FAILING DEBTOR.—A failing debtor by bill of sale conveys to one of his creditors his stock of goods, and immediately thereafter the creditor, by written contract, employs the debtor to take charge of and sell the goods. *Held*:

(1) The two instruments may be read together as evidencing the transactions between the two parties.

(2) That the employment of the debtor is not fraud per se, but only a badge of fraud to be explained by circumstances.

(3) That, there being nothing to show that the debt for which the transfer was made was kept in existence, the transaction was not a mortgage.

3. CREDITOR TAKING GOODS IN PAYMENT.—A creditor can take from a failing debtor goods in payment of his debt, although the effect be to hinder other creditors. Only so much can be taken as reasonably sufficent to discharge the debt; but a slight excess, not taken by design, will not avoid such transaction.

APPEAL from Hill.   Tried below before Hon. J. M. Hall.

*S. C. Upshaw* and *T. S. Smith,* for appellant:   The bill of sale and contemporaneous written agreement, being executed at same time by and between same parties, should be construed as one instrument, and being one instrument, the law would hold it to be a mortgage, and as it expressly stipulates a continuance of possession in the mortgagor, being on a stock of goods daily exposed for sale in parcels, it is fraudulent and void.   (Dunlap v. Wright, 11 Texas, 597; Howard v. Davis, 6 Texas, 174; Alexander v. Baylor, 20 Texas; 560; Shaw v. Parvin, White & Willson's Civil Cases, 154; Acts of 1879, chap. 53, p. 57, sec. 17; Peiser v. Peticolas, 50 Texas, 638; Nat. Bank of Texas v. Lovenberg, 63 Texas, 506.)

*Jo. Abbott,* for appellees, cited Revised Statutes, art. 4823; Green v. Banks, 24 Texas, 513; National Bank of Texas v. Lovenberg, 63 Texas, 509; Greenleve v. Blum, 59 Texas, 124.

HOBBY, JUDGE.   This was an action under the statute for the trial of the right of property to a stock of merchandise levied upon by the appellant—plaintiff—in attachment, on the sixth day of February, 1885, as the property of J. E. Martin, against whom appellant had instituted suit in the county court of Hill county upon a promissory note for four hundred and forty-eight dollars and fifty-three cents, executed by Martin to appellant on the twenty-seventh day of September, 1884.   The appellees, Schoelkopf & Co., on the thirteenth February, 1885, filed an affidavit claiming the property, and a bond payable to appellant and Heidman Benoist Saddlery Company, who had caused a similar writ to be issued out of the same court and levied upon the property.   The officer assessed the value of the property at six hundred and ninety-nine dollars and ninety-eight cents, and the bond was executed in the sum of one thousand four hundred dollars.   The writs, bond and affidavit were returned to the district court of Hill county, where, upon the issues (already stated) joined, a trial on the eleventh day of March, 1886, resulted in a judgment on the thirteenth March, 1886, for the claimants—appellees—for the property.   From which judgment the appellant appeals, and assigns as error, first, that the court erred in refusing to dismiss the claim of appellees, because the bond was not payable to plaintiff in attachment.

The bond was made payable to two attaching creditors, the appellant and Heidman Benoist Saddlery Company, each having levied a writ of attachment upon the property which is the subject matter of the suit.

In the case of Blankenship v. Thurman, 68 Texas, 672, it was suggested that the proper practice would be to make one bond payable to all the plaintiffs in the writs.   This suggestion was commented upon in the case of Elser v. Graber, 69 Texas, 223, and it was there decided that such was the correct practice. Article 4823, of the Revised Statutes, was amended by the acts of the Twentieth Legislature, which act now provides that, "when more that one writ has been levied said bond—the claimant's—may be made payable to all the plaintiffs in the several writs levied." (Gen. Laws Twentieth Leg., 104.)   We are of opinion there was no error in refusing to dismiss the claim of appellees.

The second assignment of error is that the court erred in not construing the bill of sale from Martin to appellees and the

cotemporaneous written agreement between Martin and appellees, to be a mortgage.

The bill of sale is absolute upon its face, and vests the title to the property unconditionally in appellees. The written agreement executed on the same day is a contract of employment of Martin by Schoelkopf & Company, by the terms of which, the former was to take "possession of the store and goods, manufacture and supervise the manufacturing of the material into saddles, harness, etc., and as an employe of appellees to continue the sale of the merchandise and remit twice per week the proceeds of sale to appellees, at Dallas, after deducting expenses, and for these services it was stipulated that Martin should be paid a salary of sixty-five dollars monthly." And the contract provided that "it might be rescinded at the option of either party."

It is contended by appellant that the bill of sale, and contract referred to, having been "executed at the same time, and between the same parties, should be construed as one instrument, and the law would hold it to be mortgage, and as it expressly stipulates a continuance of possession in the mortgagor, being on a stock of goods daily exposed for sale in parcels, it is fraudulent and void."

The true test in determining whether an insrument be a mortgage or not is, was the old debt at the time of the conveyance canceled, and absolutely paid? Is the relation of debtor and creditor unqualifiedly terminated? If so it is not a mortgage. (Ruffier v. Womack, 30 Texas, 340; Hudson v. Wilkinson, 45 Texas, 452.) The mere fact that they were two instruments and were executed at the same time would not necessarily make it mortgage. (Austin v. Cundiff, 52 Texas, 463.) It depends upon the intention of the parties as illustrated by all the facts and circumstances in evidence.

There is certainly nothing in the bill of sale and the contract of employment indicating in the slightest degree that the relation of debtor and creditor existed after the conveyance to appellees, or that the debt due to them from Martin of two thousand one hundred and eighty dollars, was not fully and absolutely paid by the transfer of the property. Nor can we perceive from the evidence in the case, anything that would have authorized the construction contended for by the appellant.

Unquestionably, two instruments contemporaneously exe-

cuted, and having reference to the same subject matter may in many cases support the conclusion that they were intended to and did operate as a mortgage. Nor will the fact alone that an instrument upon its face contains no terms of defeasance be decisive in determining the question whether it is a mortgage or not.

If from the instrument or from the surrounding circumstances it appears to have been given as a security for a debt, it will be considered a mortgage. In the case before us, however, we do not think the facts call for the application of these principles. The bill of sale to the appellee, executed and recorded on the eighteenth day of September, 1884, nine days before the execution of the note sued on by appellant and more than four months prior to the institution of his suit and levy of his attachment were absolute, and the evidence is that there was no secret or other understanding between Martin and appellees than that therein expressed.

Appellees had their main and only establishment at Dallas. The stock of goods was in the store of Martin, at Hillsboro, for which market, it seems, it was purchased. After the conveyance of the goods in payment of the debt, it was left for appellees either to incur the additional expense and trouble of a reshipment of the goods, already on shelves, exposed for sale in a market they were supposed to be adapted to, and a probable forfeiture of the insurance of the stock at Hillsboro, or to employ some suitable person to continue to sell them, and to manufacture the material into saddles, harness, etc.

The employment of Martin under the circumstances, he being familiar with the business, and, it appears, understanding the manufacture of the material into saddles, etc., was most natural.

The instructions given by appellees to Martin, to sell for cash only and remit twice a week to appellees the proceeds of sales, were specific and evidenced the right in them, as owners of the property, to take full control, and to change the manner in which the business had been conducted, it appearing that Martin had sold on credit and had a large amount outstanding in the shape of accounts and notes. There was no connection between the bill of sale and the contract. The latter related exclusively to Martin's employment, and had no reference to the subject matter of the bill of sale.

There is nothing in the evidence that would have authorized

the court to have construed the bill of sale and written contract as a mortgage, and we think there was no error in the action of the court in this respect.

The third assignment of error raises the question whether the possession and conduct of the business by Martin, after the sale to appellees, did not invalidate the conveyance. In this State the rule is that the possession of the seller is only prima facie evidence of fraud, and not fraud *per se,* and that it may be rebutted by evidence explanatory of the possession and showing that it is consistent with a fair transaction. (Edwards v. Dickson, 66 Texas, 616.) This question was most elaborately treated in Bryant v. Kelton & Uzzell, 1 Texas, 415, and the subject reviewed from Twyne's case to the present time. It is not a conclusive presumption, but changes the burden of proof and requires an explanation to remove it. (Gibson v. Hill, 21 Texas, 228.) The employment of the assignor as clerk, it has been held, would not of itself be evidence of an original purpose to defraud creditors. (Van Hook v. Walton, 28 Texas, 74.) The employment by appellees of Martin, as we have already stated, was in strict subordination to the appellees, and he had no control whatever over the property, except as specifically directed in the written contract of employment.

It is obvious that Martin was put in possession merely as a salesman for appellees, and we think that all the facts and circumstances under which he was employed satisfactorily explains his possession, and are entirely consistent with the fairness of the transaction.

The only remaining question to be disposed of is as to the effect upon the conveyance of the excess in the value of the goods received by the appellees above the amount of the debt and the subsequent payment thereof to Martin by appellees.

The right of a creditor to receive goods in payment of his debt, though he knows its effect will be to delay other creditors, is well recognized in numerous cases, but it has not been held that property taken in payment of a debt must be exactly the same in amount as the debt paid with it, but it must not be more than is reasonably necessary to discharge the indebtedness. (Greenleve v. Blum, 59 Texas, 124.) In a later case it is said: "The law makes some allowance for honest mistakes as to the value of the property conveyed, and will not avoid the conveyance for slight differences unless brought about by the fraud of the parties. When the transaction is in

Opinion of the court.

all other respects fair, there must be an unreasonable dispro-
portion between the value of the property and the amount of
debt to avoid it." (LaBelle v. Tidball, 69 Texas, 166; Allen v.
Carpenter, 66 Texas, 140.)

If the property clearly exceeded in value the sum due the
appellees, and that fact was known to them, and the fact that
the debtor was insolvent, and they had paid, or agreed at the
time of the sale to pay Martin the excess, to induce him to
make the conveyance, whereby other creditors were prevented
from enforcing their claim, the sale should be set aside.

In this case the fact that the goods conveyed, slightly ex-
ceeded in value the amount of the debt was not only unknown
to appellees, but it was not practicable, if possible, to ascertain
that fact. The Waxahachie stock was in another county, and
its value was arrived at by reference to the invoices in Mar-
tin's possession, and it is shown by the evidence, that it was
only after this latter stock had been shipped to appellees, at
Dallas, and upon a careful examination of the goods that ap-
pellees discovered that they exceeded the value estimated at
the time of the sale, to the extent of one hundred and fifty-
three dollars and fifty cents, which, in the spring or summer
of 1885, appellees paid to Martin. The evidence shows that
this was not done in pursuance of any understanding or agree-
ment. And that no inducement was offered Martin by appel-
lees to make the sale, is manifest from all the direct testi-
mony, corroborated by the circumstances attending the sale.

We do not think the excess under the facts in this case was
unreasonable, nor would the payment of it by appellees to
Martin invalidate a sale made six months before, which was
in all respects honest and fair, and we are of opinion that
there is no error in the judgment, and that it should be
affirmed.

*Affirmed.*

Opinion adopted October 16, 1888.

STAYTON,
*Chief Justice.*