JERRE S. WILLIAMS, Circuit Judge:
 

 Appellant, Shearn Moody, Jr., appeals the district court’s order requiring Moody National Bank of Galveston to give Bankruptcy Trustee Smith at least 72 hours advance notice prior to any contemplated or actual distribution by the bank as trustee of funds from a spendthrift trust established by Mr. Moody’s grandfather to appellant or his designated agent. We affirm the district court’s notice requirement.
 

 I.
 

 On November 14, 1983, Shearn Moody, Jr. filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Middle District of North Carolina. The case was converted to a Chapter 11 proceeding on March 21, 1984, and a Chapter 11 trustee was appointed. Moody’s bankruptcy case was then transferred to the Southern District of Texas, and appellee, W. Steve Smith, was appointed successor trustee. On June 28, 1985, Trustee Smith filed a complaint against Shearn Moody, Jr. and Moody National Bank of Galveston, trustee, seeking a determination of the rights of the parties under a spendthrift trust, including a turnover of funds received and to be received from this trust, an accounting, a temporary restraining order, and a preliminary injunction.
 

 
 *721
 
 The trust at issue was created by Shearn Moody, Jr.’s grandfather, the late W.L. Moody, Jr., on December 26, 1934. This trust has been held to be a spendthrift trust by both state and federal district courts.
 
 [1]
 
 No party disputes the spendthrift status of the trust. The provisions of this spendthrift trust require the trustee to pay over to the beneficiaries monthly the net amount of income and cash dividends received from the trust corpus.
 
 [2]
 
 Shearn Moody, Jr. is one of the trust’s beneficiaries. He has a life estate in a pro rata share of all the net income and cash dividends derived from the trust corpus.
 

 In his second amended complaint against Shearn Moody, Jr. and Moody National. Bank, Trustee Smith sought to recover from Mr. Moody the trust distributions made to him within the 180 day period subsequent to the filing of his bankruptcy petition on November 14, 1983. Smith claimed these distributions, which totaled $77,151.99,
 
 [3]
 
 were property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A).
 
 [4]
 
 In the event Moody no longer had possession of these distributions, the trustee requested an equivalent amount plus interest from the trust distributions that had been escrowed pursuant to a previous court order
 
 [5]
 
 or from the trust funds currently on deposit in the court’s registry pursuant to another prior court order.
 
 [6]
 

 Trustee Smith also sought a declaration that all trust distributions made to or for the benefit of Shearn Moody, Jr. after the filing of his bankruptcy petition were subject to various post-petition claims. The claims include Trustee Smith’s claims for recovery of pre- and post-petition transfers and damages, claims of Moody’s post-petition creditors, claims which were not discharged, and Trustee Smith’s damages related to several of his suits against Moody, including the damages arising from his prosecution of Trustee’s Motion for Enforcement and Trustee’s Emergency Motion to Compel Turnover of Books and Records. Smith requested that a charge be placed on all existing, escrowed, and future trust distributions attributable to Moody’s interest in the trust for the satisfaction of
 
 *722
 
 these claims and that the Bank be required to give Smith ten working days advance notice of the exact date, place, time and manner of each and every future trust distribution to Moody.
 
 [7]
 
 In the event that the court declined to place a charge on Moody’s existing, escrowed, and future trust distributions, Trustee Smith requested that Moody National Bank be directed to continue to deposit all of Moody’s future distributions into the account established pursuant to the January 16, 1986, court order.
 

 On January 20,1987, appellee Smith filed a motion for summary judgment. The court granted this motion on March 2, 1987. In its order the district court held that the trust distributions made within the 180 day window following the filing of Shearn Moody, Jr.’s bankruptcy petition were property of his bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A) despite the spendthrift provisions of the trust and the related statutory provision, 11 U.S.C. § 541(c)(2). The court held that Moody had already converted these distributions, resulting in a diminution in the value of his bankruptcy estate, and further held that Trustee Smith could recover the December 15, 1983, and April 3, 1984, trust distributions from Moody, or their value, pursuant to 11 U.S.C. § 550(a). The court also awarded Trustee Smith interest and costs.
 
 [8]
 
 The court, however, declined to place a charging order against the various past and future trust distributions to Moody. But the court did extend the January 16, 1986, order for a period of 60 days from the entry of the Order Granting Summary Judgment “in order to give the [trustee] an opportunity to attempt to execute against distributions from [the trust] to the Defendant Debtor on deposit, and to be deposited, in the Defendant Debtor’s account at the Defendant Bank for recovery of the [trustee’s]
 
 post-petition
 
 claims against the Defendant Debtor,
 
 including the summary judgment granted hereby.”
 
 (emphasis added).
 

 On April 16, 1987, Trustee Smith filed an Application for Writ of Garnishment against Moody National Bank, garnishee, to recover the $77,151.99 plus interest from Moody’s escrowed trust distribution funds deposited in the bank pursuant to the January 16, 1986, order.
 

 The district court denied Trustee Smith’s garnishment application, apparently finding that the trust funds on deposit at Moody National Bank were still protected from garnishment by the spendthrift provisions of the trust since the deposit of the funds by the bank into this account did not constitute receipt of the funds by Moody or his agent.
 
 [9]
 
 The court also dissolved the January 16, 1986, order prohibiting the distribution of trust funds to Shearn Moody, Jr. by Moody National Bank. The court, however, ordered that Moody National Bank give Trustee Smith and his attorney at least 72 hours prior written and oral notice of any contemplated or actual distribution by the bank of the spendthrift trust funds, including those presently escrowed and on deposit. The notification is “to include the date and hour of such distribution, the method of transfer, the complete name and address of such addressee, desig-nee or transferee as well as the source of such instructions if other than those contained in the trust instrument.”
 

 The only issue before us is Shearn Moody, Jr.’s appeal of this 72 hour notice provision.
 

 II.
 

 A beneficiary’s interest in a spendthrift trust is excluded from his bankruptcy estate by 11 U.S.C. § 541(c)(2), if state
 
 *723
 
 law and the trust so provide.
 
 [10]
 

 Matter of Goff,
 
 706 F.2d 574, 580 (5th Cir.1983). Texas law and the trust in the case at bar do so provide.
 
 [11]
 
 In general, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors.
 
 In re Brooks,
 
 60 B.R. 155, 159 (Bankr.N.D.Tex.1986);
 
 Hines v. Sands,
 
 312 S.W.2d 275, 278 (Tex.Civ.App.—Fort Worth 1958, no writ). Spendthrift trusts have long been held valid by Texas courts.
 
 Hines v. Sands,
 
 312 S.W.2d at 278.
 

 Unless the settlor creates the trust and makes himself beneficiary, the corpus and future income of a spendthrift trust in the hands of the trustee is not subject to execution or garnishment by the creditors of a beneficiary. Furthermore, income from a spendthrift trust which has already accrued in the hands of the trustee, but which has not yet been paid to the beneficiary, is also exempt from the claims of a beneficiary’s creditors.
 
 First Bank & Trust v. Goss,
 
 533 S.W.2d 93, 95 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ);
 
 Hines v. Sands,
 
 312 S.W.2d at 278.
 

 The exclusion of spendthrift trust income payments from a debtor's bankruptcy estate is tempered slightly by 11 U.S.C. § 541(a)(5)(A). Under that statutory provision, the income payments from a spendthrift trust which the beneficiary is entitled to receive or does receive within the 180 day period after the filing of the bankruptcy petition áre brought into the bankruptcy estate.
 
 [12]
 
 11 U.S.C. § 542(c)(2) does not prevent this “reaching forward.”
 
 In re Kragness,
 
 58 B.R. 939, 944 (Bankr.D.Or.1986);
 
 Matter of Hecht,
 
 54 B.R. 379, 384 (Bankr.S.D.N.Y.1985),
 
 affirmed sub nom, Togut v. Hecht,
 
 69 B.R. 290 (S.D.N.Y.1987). This result is consistent with the theory of the spendthrift trust because once trust income is paid to the beneficiary the income so paid is no longer subject to the protection of the spendthrift provisions contained in the trust.
 
 In re Kragness,
 
 58 B.R. at 944;
 
 Togut v. Hecht,
 
 69 B.R. at 291. The Texas law on spendthrift trusts leads to the same result. Neither the Texas Trust Code nor the applicable common law undertake to protect trust property from the reach of a beneficiary’s creditors once such property has been distributed to the beneficiary.
 

 The corollary that necessarily must follow from this holding is that income distributions from a spendthrift trust that occur after the 180 day window of § 541(a)(5)(A) are not to be included in the debtor’s bankruptcy estate and instead are part of the debtor’s “fresh start.” As a result, such income distributions are free from the pre-petition claims of the debt- or/beneficiary’s creditors or any other claims that may be discharged by the bankruptcy proceedings.
 

 Critical to this case, however, is the fact these later trust income distributions are subject to post-petition creditor claims and judgments, and claims not discharged in the bankruptcy proceedings. Furthermore, a district court has jurisdiction to enforce judgments against property other than property of a bankruptcy estate
 
 *724
 
 or property protected by the spendthrift provisions of a trust.
 
 [13]
 

 In re Crabtree,
 
 39 B.R. 702, 711 (Bankr.E.D.Tenn.1984).
 
 See also Southmark Properties v. Charles House Corp.,
 
 742 F.2d 862, 868 (5th Cir.1984). The district court was exercising this power when it took the jurisdiction over Moody National Bank to require the bank to give the 72 hour advance notice. The bank was a defendant in this suit and was a party in interest in the main bankruptcy case of Shearn Moody, Jr. The jurisdiction of a district court sitting as a bankruptcy court is not limited to the property in the debtor’s estate. The court has original jurisdiction of “all civil proceedings arising under title 11, or arising in or related to cases under title 11.” 28 U.S.C. § 1334(b). This jurisdiction properly extends to an order in aid of collecting valid claims and judgments of the bankruptcy trustee against the beneficiary of the trust.
 

 AFFIRMED.
 

 [1]
 

 . The language in the trust giving rise to spendthrift trust status is as follows:
 

 V.
 

 No beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in the Trust Estate or any part thereof prior to the actual distribution thereof to said beneficiary; and the Trust Estate, in the possession of the Trustee, shall not be liable in any manner for the debts, contracts, engagements or torts of any of the beneficiaries. No beneficiary shall be permitted to appoint any Agent or Attorney in Fact, except as specifically permitted by the Trustee, to collect or receive any part of the Trust Estate if the Agent or Attorney in Fact has directly or indirectly made any advances of money or other consideration to such beneficiary with the agreement or expectation of having the same recognized as a claim so as to collect or receive any part of the Trust Estate from the Trustee. The receipts of the beneficiaries shall be the sole discharge and release of the Trustee.
 

 [2]
 

 . Actually the trustee makes only quarterly distributions to the beneficiaries because the sole asset of the trust is stock which pays quarterly dividends.
 

 [3]
 

 . A distribution of $38,594.56 was made to Mr. Moody on December 15, 1983, and one of $38,-557.43 was made on April 3, 1984.
 

 [4]
 

 . 11 U.S.C. § 541(a)(5)(A) reads:
 

 (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
 

 [[Image here]]
 

 (5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date— (A) by bequest, devise, or inheritance; ...
 

 [5]
 

 . In a January 21, 1986, order, the bankruptcy court required Moody National Bank to deposit all future trust distributions attributable to Shearn Moody, Jr. into a segregated interest-bearing account in the name of the Estate of Shearn Moody, Jr., Chapter 11 Debtor
 
 pendente lite.
 
 All trust distributions to Shearn Moody, Jr. since that time have been deposited into this account.
 

 [6]
 

 . On October 31, 1986, the district court ordered Moody’s lawyers to turn over all funds of Moody in their possession and control, which included the March 29, 1985, and June 28, 1985, trust distributions, plus interest, into the court’s registry.
 

 [7]
 

 . Prior to the January 16, 1986, order, Shearn Moody, Jr. had directed Moody National Bank to pay his trust distributions over to Moody’s administrative assistant or directly into Moody’s account in a Canadian bank.
 

 [8]
 

 . The court entered judgment in the amount of $77,151.99, the sum total of the December 15, 1983, and April 3, 1984, trust distributions, in favor of Trustee Smith against Shearn Moody, Jr., plus prejudgment interest at the rate of 6.0%, all costs of court, and post-judgment interest of 6.09%.
 

 [9]
 

 .Shearn Moody, Jr. had no access to this account without resort to court order.
 

 [10]
 

 . 11 U.S.C. § 541(c)(2) reads:
 

 A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
 

 [11]
 

 . The relevant portion of the Texas Trust Code states:
 

 § 112.035. Spendthrift Trusts
 

 (a) A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
 

 (b) A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a “spendthrift trust" is sufficient to restrain voluntary or involuntary alienation of the interest by a beneficiary to the maximum extent permitted by this subtitle.
 

 (c) A trust containing terms authorized under Subsection (a) or (b) of this section may be referred to as a spendthrift trust.
 

 (d) If the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest does not prevent his creditors from satisfying claims from his interest in the trust estate.
 

 Tex.Prop.Code Ann. § 112.035.
 

 [12]
 

 .Such trust income payments would qualify as "bequests" under 11 U.S.C. § 541(a)(5)(A).
 

 [13]
 

 . 11 U.S.C. § 105 provides:
 

 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.